IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DAVID ROCKWELL (Husband); ) | COMPLAINT FOR |
| LISA ROCKWELL (Wife); ) | INJUNCTIVE, DECLARATORY AND |
| CHEYENNE ROCKWELL (Adult Child); ) | MONETARY RELIEF. |
| GABRIEL ROCKWELL (Adult Child), ) | |
| JAMES ROCKWELL (Adult Child) ) | |
| On behalf of themselves and all ) | |
| Individuals similarly situated, ) | DEMAND FOR JURY TRIAL |
|       Plaintiffs ) | |
| V ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| DEFENSE; ) | |
| NORTH HAVEN COMMUNITIES ) | |
| LLC (NHC), ) | |
| ACTUS LEND LEASE LLC (ALL) ) | |
|       Defendants ) Case: 4:18 - cv - 00001 - SLG | |

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 1

3240 Plato Way
North Pole, AK 99705
ROCKWELL    (907)750-7101

# INTRODUCTION

1.  By this action, a military family who were stationed at the United States Army's Fort Wainwright, Alaska seek to require the private companies that provide their on-post housing to treat individuals with disabilities fairly and equally to all other individuals. Three Rockwell family members are enrolled in the Exceptional Family, Member Program ("EFMP"), a mandatory program of the Army. EFMP tracks families with disabled members to ensure that the family is assigned to a base which can provide the medical and special education services needed by the disabled family member. Because of their membership in EFMP, and the disability-related housing needs of their disabled family members, these families have experienced discrimination, retaliation, and unjust treatment from their Fort Wainwright housing provider.

2.  The Army announced that it had selected a private development partner for on-post housing at Fort Wainwright, Alaska, under the Military Family Housing Privatization Initiative. That partner is Actus Lend Lease LLC / North Haven Communities LLC (NHC), the Army agreed to collaborate with ALL/NHC to develop a Community Development and Management Plan (CDMP). The CDMP was adopted and now serves as a major part of the contract between ALL /NHC and the Army that governs the Army's residential community at Fort Wainwright, Alaska. Pursuant to the CDMP, ALL / NHC, together with its agents. ALL and NHC manages, renovates, and builds the on-post housing at Fort Wainwright for roughly 1,800 homes. NHC Communities LLC directly receives rent from the families (via automatic deductions from the families' Army paychecks).

3.  NHC has engaged in a pattern and practice of discrimination against people with disabilities living in family military housing, including Failure to Initiate, failure to provide reasonable modifications, failure to provide reasonable accommodations, retaliation, and unlawful inquiries about individuals' disability status. These actions violate state and federal fair housing laws; they have harmed and continue to harm Fort Wainwright military families. NHC's practice of discrimination against individuals with disabilities is harmful in light of the stress and hardship faced by families during a time in which many of their soldiers have been deployed to serve in Iraq and Afghanistan. Accordingly, plaintiffs seek a preliminary and permanent injunction to prevent All / NHC from continuing to discriminate against individuals with disabilities and to require ALL/NHC to adopt fair, reasonable, and nondiscriminatory policies,

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 2

3240 Plato Way
North Pole, AK 99705
ROCKWELL    (907)750-7101

1  practices and procedures in its provision of on-post housing. Require Actus Lend lease and the
2  Department of Defense to bring all housing up to meet 2010 disability requirements

### JURISDICTION

4. This Court has federal subject matter jurisdiction of this action pursuant to 28 18 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction) for claims arising under the Fair Housing Act, 42 U.S.C. § 3401 et seq., the Rehabilitation Act, 29 U.S.C. § 794 et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the United States Constitution's Due Process and Equal Protection Clauses.

5. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction of plaintiffs' additional claims under Alaska state law because plaintiffs' state law claims relate to plaintiffs' federal law claims, arise out of a common nucleus of operative facts, and form part of the same case or controversy under Article III of the United States Constitution.

### VENUE

6. Venue lies in the District of Alaska under 28 U.S.C. § 1391 because plaintiffs' claims arise from unlawful conduct occurring in this judicial district, and because the real property which is the subject of this action is located in this judicial district.

### PARTIES

7. Plaintiff DAVID ROCKWELL was a soldier stationed at Fort Wainwright. David is 90% disabled and has three family members with disabilities. All of these family members have personally experienced disability discrimination in on-post housing since NHC began managing the housing at Fort Wainwright. Because the Army is the source of military families' paychecks, health insurance, housing, and career advancement opportunities, and because NHC has shared (and continues to share) sensitive housing information with the Army, many of the families are extremely afraid that they will suffer retaliation from either NHC or the Army as a result of asserting their civil rights. The Rockwell family seeks to end NHC's discrimination against

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 3

3240 Plato Way
North Pole, AK 99705
ROCKWELL     (907)750-7101

themselves and others. The Rockwell's brings this action in its representative capacity on behalf
of themselves, all of whom either have disabilities themselves or who have an immediate family
member with a disability, and who are directly and adversely affected by NHC's disability-based
discrimination. The Rockwell's also brings this action in its representative capacity on behalf of
other military families who are not yet known but who are also directly and adversely affected by
NHC's disability-based discrimination.

8.    Plaintiff DAVID ROCKWELL is a resident of North Pole, Alaska.

9.    Plaintiff LISA ROCKWELL is a resident of North Pole, Alaska.

10.   Plaintiff GABRIEL ROCKWELL is a resident of North Pole, Alaska

11.   Plaintiff JAMES ROCKWELL is a resident of North Pole, Alaska.

12.   Plaintiff CHEYENNE ROCKWELL is a resident of North Pole, Alaska

## **Defendants**

13.   UNITED STATES DEPARTMENT OF DEFENSE (DOD)

14.   NORTH HAVEN COMMUNITIES LLC (NHC)

15.   ACTUS LEND LEASE LLC (ALL)

## FACTS UNDERLYING PLAINTIFFS' CLAIMS
### A. Military Housing Privatization

16. In recent years, the Department of Defense ("DoD") has struggled with the worsening
problem of old and dilapidated military family housing. The DOD has estimated that nearly two-
thirds of its housing inventory needs repair or complete rehabilitation, which represents about
200,000 housing units out of a total of over 300,000 family housing units in DOD's inventory.
To help remedy this problem, Congress enacted the Military Housing Privatization Initiative
(MPHI) in 1996 as part of the National Defense Authorization Act for Fiscal Year 1996.

17. The standard method of funding the repair and replacement of military family
housing is through military construction dollars. However, declining defense budgets and
increasingly rigid government procurement processes have contributed to the deterioration of
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 4

3240 Plato Way
North Pole, AK 99705
ROCKWELL      (907)750-7101

1   military family housing. The military recognizes that the traditional methods it uses to repair,

2   replace, operate, and maintain military family housing are slow, cumbersome and expensive

3   compared to the private sector. At the same time, service members cannot simply be moved into

4   private sector housing because it is financially impossible for many young service members to

5   afford decent civilian housing. Dilapidated military housing is their only alternative.

6   18. With the MHPI, Congress gave DOD the legal authority to use a variety of methods

7   to obtain private sector financing, expertise and management to repair, renovate and construct

8   military family housing. The MHPI authorizes direct loans and loan guarantees, rental occupancy

9   guarantees, conveyance or lease of existing properties and facilities, differential payments to

10  supplement service members' housing allowances, and investments such as limited partnerships

11  and stock/bond ownership. 10 U.S.C. § 2871 et seq. These tools provide flexibility in structuring

12  agreements with private developers to provide military family housing. They enable the services

13  to draw upon private sector investment capital and housing construction expertise. By using

14  available government assets, DOD seeks to entice the private sector to use its capital to invest in

15  construction or renovation of military housing. The government can reduce the initial cost of

16  construction, repair and renovation using MHPI authorities.

17  19. As of December 2003, the military services have awarded housing projects, with

18  more in various stages of solicitation. The first military housing privatization project was

19  awarded at Lackland Air Force Base, Texas, in August 1998. The Army's first MHPI project was

20  at Fort Carson, Colorado. In September 1999. The Army awarded the Fort Carson project for

21  construction of 820 new units and renovation of 1,823 existing housing units, all situated on the

22  installation. Fort Carson executed an outright conveyance of the 1,823 existing units, signed a

23  fifty-year lease of the land to the developer, and provided a loan guarantee for a private-sector

24  loan. Similar to the Lackland project, the developer at Fort Carson owns, operates and maintains

25  housing units and rents them directly to eligible soldiers.

26  20. The Army awarded the Fort Wainwright project to NHC/ALL. The Army

27  collaborated with ALL/NHC to develop a Community Development and Management Plan

28  (CDMP) for Fort Wainwright September 5, 2008.

29  NHC took over the day-to-day management of on-post housing at Fort Wainwright on or about

30  September 5, 2008. All military families living in on-post housing were required to sign new

31  leases with NHC.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 5

3240 Plato Way
North Pole, AK 99705
ROCKWELL        (907)750-7101

1    21. Fort Wainwright has a Standard medical facility on post called the Bassett Army
2    Medical Center ("Bassett"). As part of the EFMP, the Army attempts to station military families
3    with disabled members at bases that have the medical and social capacity to accommodate their
4    needs. Because Bassett has limited capacity in this regard, Fort Wainwright has a relatively low
5    population of reported military families who have at least one family member with a disability.
6    22. Almost all military families with disabled members want to live in on-post housing so
7    they can have easier access to Bassett, both for regularly scheduled medical visits as well as
8    emergency room visits, which are common for children with disabilities. In fact, these families
9    are strongly pressured by the Army's medical insurance program, Tri-Care, to live on-post
10   because if they do not, they often have to receive medical care from civilian hospitals in the area.
11   Tri-Care prefers military families to receive medical care from military medical facilities 20 in
12   order to keep costs lower.
13   23. Since the enactment and implementation of the MHPI, just as before, military
14   members are allotted a Basic Allowance for Housing (BAH) each month. The BAH appears as a
15   distinct amount on the soldier's paycheck. However, the soldier does not have access to these
16   funds: for soldiers who live in on-post family housing at Fort Wainwright, the BAH is
17   automatically withdrawn from the soldier's paycheck as an "allotment" and deposited with the
18   private housing provider, which is known to the families as "NHC." All military families living
19   in on-post housing at Fort Wainwright pay their rent to NHC and are told that NHC manages
20   their housing.
21
22   **B. Defendants' Pattern and Practice of Discrimination**
23
24   24. Defendants, acting individually and in concert with others, directly and through
25   agents, have engaged in a pattern or practice of discrimination against people with disabilities in
26   the operation of on-post family housing at Fort Wainwright. Defendants continue to engage in
27   such a pattern or practice of discrimination so as to constitute a continuing violation.
28   25. Defendants' pattern or practice of discrimination against people with disabilities
29   includes, but is not limited to: NHC requires families requesting reasonable accommodations for
30   on-post housing at Fort Wainwright to disclose whether the soldier or anyone in his or her family
31   is enrolled in EFMP.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 6

3240 Plato Way
North Pole, AK 99705
ROCKWELL      (907)750-7101

26. NHC has required families to provide additional information about their disabled family members. The EFMP paperwork is essentially a summary of each family's medical records. It contains detailed, confidential medical information, and is protected from such disclosure by federal privacy law.

27. NHC has refused to make reasonable structural modifications needed by persons with disabilities, on grounds that it is not required to make or allow such modifications. At times, NHC has refused to even allow families with disabled members to make reasonable and necessary structural modifications themselves.

28. NHC has refused to consider or has denied disability-related requests for reasonable accommodations to policies, practices, or services, such as charging for a seizure alert dog after having knowledge of the disability prior to move in with medical documentation of the disability, then demanding "Medical Documentation for the need for a seizure dog".

29. NHC's Director of Property Management Maggie Vercruyssen directly contacted the Army and EFMP without the families consent. NHC Maggie Vercruyssen has texted and complained to a soldier's Army chain of command regarding the soldier's family member's disability-related problem. These complaints have had the effect of threatening a soldier's position and career in the Army. NHC has refused to rent to some families with disabled members because it says there is no available housing unit that can accommodate them, despite the fact that there are approximately 2,500 housing units at Fort Wainwright.

30. NHC has made the process of applying for disability-related accommodations or modifications extremely difficult and burdensome. Families have had to make requests multiple times, and are required to provide a specific form, which must be filled out by the Family member for NHC to contact EFMP directly for approval. No other form of medical disability documentation, will be accepted. NHC may still reject the modification or accommodation request as not returned to suit their needs or for other reasons. Furthermore.

31. Following military custom, NHC has a policy of allocating families to housing units based solely on (1) the soldier's military rank and (2) the number of dependents in the family. This policy is enforced evenly by NHC even if a family member has a disability and a unit is available with a different number of bedrooms, or the accessible unit is restricted to soldiers of a different rank. As applied to people with disabilities, this policy effectively denies such, individuals accessible housing even when housing is available.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 7

3240 Plato Way
North Pole, AK 99705
(907)750-7101
ROCKWELL

1      32. NHC has failed to clear the sidewalks when requested in the residential

2  neighborhoods at Fort Wainwright. This makes it extremely difficult for individuals with

3  mobility disabilities to access services and to conduct other everyday business.

4      33. NHC states the policy requires all accessibility modification requests to be routed

5  from the patient through NHC directly to the EFMP Committee, for review and approval of the

6  request from Bassett Army Medical and ultimately, NHC. Furthermore, lack of initiative to

7  attempt to find "outside resources" to complete modifications. The policy makes it even more

8  difficult and burdensome for families to make it through all the levels of process to actually

9  receive in a timely manner the modifications they need and to which they are legally entitled. It

10 effectively puts up roadblocks instead of providing accessible housing as the law requires. The

11 policy does not address reasonable accommodation requests.

12     34. Plaintiffs asked for their legal entitlements to reasonable accommodations and

13 modifications.

14     35. The acts of retaliation and harassment are described further in section C, below,

15 describing each named Plaintiffs' factual situation;

16

17     **C. Experiences of Families with Disabled Members at Fort Wainwright**

18         **1. David Rockwell**

19

20     36. David Rockwell, a Veteran previously stationed at Fort Wainwright. David is 90%

21 Disabled and has 3 family members enrolled in EFMP and disabled within the meaning of the

22 federal Fair Housing Act, 42 U.S.C. § 3602(h).

23     37. David lived in (NHC) on-post housing at Fort Wainwright with his wife and

24 children from 2009 to 2012 in Denali Village The home though not an ADA home the

25 home was constructed to meet the new construction standards of accessibility through the

26 lower levels. Denali Village met all the disability needs of the Rockwell family. All of

27 Denali Villages 5 Bedrooms are end unit. This request was to allow neighbors quiet

28 enjoyment due to Gabriel and James being loud from autism fits and the nocturnal seizure

29 noises.

30     38. In 2012 David and his Family did a Permanent Change of Station (PCS) move

31 to Fort Carson, Colorado. David's wife Lisa failed to acclimate and suffered from

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 8

3240 Plato Way
North Pole, AK 99705
ROCKWELL    (907)750-7101

1  Hypoxia AND Inability to tolerate high Altitudes. David requested a Compassionate

2  Reassignment (CR). A CR is a request completed by the Service Member (SM). The SM

3  chooses a duty location that will best suit his needs, the Physician and the Military Confirm the

4  Illness and ensure that Duty Station can Accommodate by a DA5434, then Approve or Deny the

5  Request. Fort Wainwright was chosen due to being one of the few Duty Stations that

6  accompanied David's Military Occupation, was at Sea Level and was accommodated by Family

7  and friends available to aid in the care of his wife and children, specifically David's daughter

8  Danelle. Danelle, a University of Alaska student Medical Assistant, familiar with the children's

9  disabilities, An ID card holder with access to the Installation and able to attend and act on behalf

10  of David and Lisa for the children's specialty care appointments in Fort Lewis Washington.

11  David was advised prior to his PCS, the unit he would be attached to, would be deploying shortly

12  after David's arrival.

13      39. On October 16th, 2013 Fort Wainwright received a DA form 5434 for sponsorship,

14  listing Lisa, Cheyenne, Gabriel and James. Including two Companion Ferrets and one Working

15  Dog (Gabriel's Seizure Alert Service Dog). Danelle could not be on the orders coming to Fort

16  Wainwright because of DOD regulations and Danelle was already in Alaska.

17      40. On November 1st, 2013 David applied for housing through Automated

18  Housing Referral Network (AHRN) and NHC, in the event one had a home first due to the

19  immediate need for a home. David explained this was a compassionate reassignment, and verbally

20  requested an end unit five bedroom in Denali Village, no pet fee for the service dog and David's

21  daughter Danelle would be the fifth dependent child as a live in caregiver. David explained he

22  would be deploying in April. Hillary Gaither notated the request for a five bedroom home in Denali

23  Village in NHC notes. NHC denied the request. *Armbruster v. Monument 3: Realty Fund VII,*

24  *Ltd.*, FH-FL Rptr. ¶ 16,182, 1997 WL 241805 (N.D. Col. April 3, 1997) (refusal to allow elderly

25  woman to move from 1- to 3-bedroom unit to allow a live-in attendant could constitute

26  discrimination).

27      41. David Rockwell provided the following documentation to NHC.

28      42. Identification (1) David Rockwell's orders bringing the family to Alaska

29      43. Identification (2) David Rockwell's Enlisted Record Brief (ERB), indicating two

30  Adult Dependents and three child dependents. NHC uses this form to determine bedroom

31  eligibility.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 9

3240 Plato Way
North Pole, AK 99705
ROCKWELL      (907)750-7101

44. Identification (3) DA-5434 Identifying a Working Dog and two Companion Animals (Ferrets)

45. Identification (4) Army Chaplain Captain Roman letter Identifying Mrs. Rockwell's Illness as documented proof for the need for the fifth bedroom for a caregiver.

46. Identification (5) Dr. Chris Davis and Dr. Tracy Cushing Colorado Clinic for Altitude diagnosing Hypoxia.

47. Identification (6) October 13th, 2009 Dr. Peter Vickerman's letter to FT WW Housing Identifying the Disabilities, the need to remain on post as close to the hospital as possible and requesting approval for the Ferrets

48. Identification (7) July 16th 2012 Fort Lewis, Washington, Army Medical Specialist Dr. Karen Fitzgerald's' letter identifying the companion animals, the children's disabilities, and the medical need for access to permanent housing as soon as possible.

49. Identification (8) October 16th, 2009 Exception to Policy Request and authorization for Companion Animals

50. Identification (9) 51. November 4th, 2013 David met with (NHC) Hillary Gaither. Gaither offered three homes A home on 599th street, a home on eighth street, and one on Neely, David had to refuse the first two homes due to number of stairs entering the home, David asked to view the inside of Neely to ensure dowstairs wheelchair accommodation, Gaither informed David due to NHC Policy David could not view the home until David signed the acceptance offer, If David refused the home David would be removed from the waiting list This reasonable Accommodation was Denied 42 U.S.C. § 3604(d) by representing to persons because of handicap that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available

52. November 6th, 2013 The Rockwell's reluctantly accepted the Neely home due to the children's immediate need for housing. Upon the walk through, it was found this new home (less than two years old) that the lower level of this home does not meet ADA standards of accessibility to the bathroom. NHC placed seven family members on David's Lease

## 2. LISA ROCKWELL

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 10

3240 Plato Way
North Pole, AK 99705
ROCKWELL     (907)750-7101

53. Plaintiff Lisa Rockwell spouse of David Rockwell, resided in on-post housing with their three minor children. Lisa is enrolled in EFMP and is a disabled person within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(h).

54. Lisa has been disabled since birth. Diagnosed at two and one half years of age by the Department of the Army with a condition, limiting blood supply to the femoral head of the hip joint resulting in the bone death, leg length discrepancies, and Scoliosis called Legg Calve Perthes. Since birth Lisa has suffered daily with walking difficulties, leg weakness, nerve pain in the back and hips, and numerous surgeries. Lisa has trouble lifting and moving objects. Lisa uses various methods of assistance for walking, such as cane or wheelchair.

55. Lisa was diagnosed in 2013 with Hypoxia and Inability to tolerate high Altitudes. Lisa developed secondary Migraines that cause loss of vision, resulting in being bed ridden for several days at a time.

56. Upon returning to Fort Wainwright, David was due to deploy to Afghanistan. Without his help around the house, Lisa's disabilities and associated pain have sometimes made it hard for her to do the physical labor of housework. In addition, her children, at the time ages fourteen, fourteen and fifteen, two of which are less than capable of completing simple housework chores without supervision.

57. In December Mrs. Rockwell contacted NHC maintenance to fix the hot water that is used for pain relief, excessive heat, and snow removal. NHC suggested a meeting with Manager Amanda Caldera. Lisa requested NHC Install a screen door, so she could hear if the dog alerted her to a seizure. NHC authorized this but again failed to initiate dialogue, NHC never followed up or completed the work.

58. December 10th, 2013 4 P.M. Lisa met with Amanda Caldera regarding excessive heat, lack of hot water, snow removal, the service dog refund, the fifth bedroom for a caregiver or the bathroom door renovation to accommodate James wheelchair.

59. Lisa explained to Caldera the hot water was for medical purposes, and the dangers of the excessive heat on autistic children. Caldera explained the Hydrobalancing, but suggested the Rockwell's meet with Connie Kiser to get an estimated time of completion. NHC could not guarantee this would fix the problem, Caldera told Lisa that she would send one more tech out in regards to the heat and stated "if the computer says its working then its working". Lisa inquired

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 11

1 about the fifth bedroom. Caldera said even if NHC could assign a five bedroom NHC

2 would make the Rockwell's wait one year,

3   60. Lisa asked about putting up a temporary partition wall to make a small

4 bedroom for a live in caregiver, Caldera stated NHC "WILL NOT" do renovations to

5 these homes, "NHC will not just go knocking down walls, the homes are too new"

6 ultimately denying the ADA request, Caldera Informed Lisa, NHC requires

7 documentation proving Gabriel's medical need for a seizure dog and training. Lisa

8 Explained to Caldera the nexus between Gabriel and Lakota and that NHC was already

9 aware of Gabriel's disability.

10   61. Caldera provided the forms for the Service Animal, Danelle to be listed as a

11 guest, and the Wheelchair Accessible door. 24 C.F.R. § 100.200-202; see Robards v.

12 Cotton Mill Associates, 713 A.2d 952 (Me. 1998) (upholding decision that it was illegal

13 for landlord to require completion of form describing disability, rather than simply asking

14 whether applicant qualified as a person with a disability).

15   62. December 12th Lisa emailed Caldera, requesting what was needed from the physician

16 about the service dog, Caldera never replied.

17   63. December 12th, 2013 Lisa met with Judge Advocate General staff James Wherry

18 about the service animal refund and the hot water issue. Mr. Wherry suggested meeting with

19 Residential Specialist Connie Kiser of Residential Communities Initiative (RCI).

20   64. December 12th, 2013 Kiser explained hydro balancing and estimated date of

21 completion end of January. Lisa provided Connie Kiser the letter from the Department of Justice

22 outlining service animals, disability, and the ADA law on what may be asked if the disability is

23 known.

24   65. December 13th, Caldera verbally confirmed receipt of Lisa's email. Caldera states

25 she needs "medical documentation for the need for a service animal". Mrs. Rockwell took the

26 Reasonable Accommodation forms to Bassett, completed a Telephone Consult form (TCON) at

27 the "Team Denali" family practice check in desk, gave the TCON and the NHC forms to the

28 secretary for the doctor to fill out and left.

29   66. December 19th, 2013 Lieutenant Colonel James Nolin notated in James Medical

30 Records "19 Dec 2013 @ 0744 am "paperwork given to EFMP and will contact patient and

31 NHC". EFMP Nurse Laura Havens sent the request directly to NHC and followed up with a

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 12

1  telephone call to remind NHC of protocol. At least one court has held that the failure to timely

2  consider a reasonable accommodation request is the same as denying the request altogether. See

3  *Groome Resources, Ltd. v. Parish of Jefferson*, 52 FD. Supp 2d 721 (E.D. La. 1999).

4      67. January 3rd, 2014 Following David's' written complaint of NHC's failure to Initiate

5  or participate in an informal dialogue, regarding the December RAF, Maggie Vercruyssen

6  director of property management called Lisa and left a voicemail wanting to set up a time to

7  discuss reasonable accommodations.

8      68. On January 13th, 2014 NHC maintenance visited the home numerous times to include

9  Jan 18th, Jan 21st, Jan 23rd, and March 5th in regards to excess heat of 85 degrees. Lisa was

10  told by maintenance to just "open windows" because the appliances downstairs were making it

11  hot upstairs.

12      69. The audio file from the Home Security Cameras, NHC Maintenance states "there is

13  nothing we can do" there is no other way to control the temperatures in the house other than

14  opening the windows.

15      70. February 17th, 2014 David and Lisa met with Vercruyssen to again request the fifth

16  bedroom, or make the downstairs bathroom door wheelchair accessible and the refund of the pet

17  fee for the service animal. David again requested Denali Village because it accommodated all of

18  the disability needs. Vercruyssen refused the Service Animal Refund and Denali Village.

19      71. February 17th, 2014 Lisa emailed Vercruyssen the same documentation provided to

20  NHC on November 1st, 2013 to justify the fifth bedroom. Vercruyssen stated in an email that

21  NHC provided the Rockwell's Denali Village in 2009 because Danelle was on a set of prior

22  orders, Lisa replied that Danelle has never been on any orders.

23      72. February 20th, 2014 Lisa asked for an exception to policy regarding Denali Village.

24  NHC demanded the Rockwell's list their daughter as a guest but Danelle was already on the

25  lease. NHC does not require this of all tenants.

26      73. February 24th, 2014 Vercruyssen emailed Lisa asking to clarify if it was a full

27  bathroom or just the bathroom door.

28      74 February 26th, 2014 Vercruyssen sent Lisa an email stating NHC was placing the

29  Rockwell's on a wait list for housing based on EFMP suggesting an ADA home, Lisa contacted

30  Bassett Hospital Patient Advocate Mr. Michael Duncan for clarification, Mr. Duncan contacted

31  EFMP Stephanie David.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 13

3240 Plato Way
North Pole, AK 99705
ROCKWELL  (907)750-7101

1    75. It is illegal for landlords to inquire or determine whether a person has a disability, 24

2    C.F.R. § 100.202(c), or to offer or impose different terms or conditions upon a tenant because of

3    disability, 24 C.F.R. § 100.202(b). Accordingly, landlords should only *respond* to requests for

4    accommodations. This rule also allows a tenant to propose the accommodation that best meets

5    the tenant's needs, rather than accepting a landlord's proposal that might be less effective. See,

6    e.g., *Green v. Housing Authority of Clackamas County*

7        76. EFMP Stephanie David emailed Vercruyssen and stated EFMP did not mean for

8    NHC to offer an ADA home and that EFMP only verifies enrollment. Vercruyssen replied it was

9    ultimately NHC's decision on bedroom qualifications but states in email dated February 18th,

10   2014 "tight restrictions on bedroom qualifications". NHC has placed Couples with no children or

11   a single child in 3 bedroom homes.

12       77. March 1st Vercruyssen was advised by email of David's deployment, Under the

13   Servicemen's Civil Relief Act You may also terminate residential and business leases entered

14   into while in military service if you receive orders to deploy for a period of at least 90 days.

15       78. March 24th Ms. Vercruyssen sent a list of neighborhoods for the Rockwell's to

16   choose from however the email states "*does not indicate there is an available home in that area,

17   nor that you would be the next to be offered a home in that area". NHC would not allow the

18   Rockwell's to view the homes prior.

19       79. Lisa sought legal advice from Jason Gazewood after NHC kept refusing to address

20   the issues. Mr. Gazewood reminded NHC of their knowledge of the disabilities.

21       80. April 14th 2014 NHC retaliated with a letter allowing the Rockwell's out of their

22   lease, NHC knew of the family's medical need to remain on Fort Wainwright. Lisa contacted

23   JAG regarding Jurisdiction. Jag Notified NHC about their Violation of Fair Housing Laws

24       81. May 14th, 2014 Lisa emailed Vercruyssen regarding the contractor to make the

25   downstairs bathroom door to where it was accessible and to fix the other issues of the home, this

26   request was denied. Hunter v. Trenton Hous. Auth., 698 A.2d 25 The trial judge concluded that

27   the Authority's offer to make a different, accessible apartment available was not a reasonable

28   accommodation to Hunter's handicap and that Hunter was entitled to permission for the ramp as

29   a reasonable accommodation to his handicap. *HUD v. Ocean Sands*, FH-FL Rptr. ¶¶ 22,055,

30   25,056, 25,061 (ALJ 1993), 25,070 (ALJ 1994) (condo association required to allow tenant to

31   install a ramp or wheelchair lift); *HUD v. Twinbrook Village Apartments*, FH-FL Rptr. ¶ 25,157

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 14

3240 Plato Way
North Pole, AK 99705
ROCKWELL (907)750-7101

1 (Nov. 9, 2001) United States v. Freer, 864 F. Supp. 324 (W.D.N.Y. 1994) (barring trailer park

2 owners from rejecting resident's request to build ramp and holding that she did not even have to

3 consider their alternative proposal). See also Elliott v. Sherwood Manor Mobile Home Park, 947

4 F. Supp. 1574 (M.D. Fla. 1996)

5       82. May 14th, 2014 Vercruyssen states the Rockwell's conference called with her in a

6 meeting with SSG Hull, this did not happen on this date

7       83. May 15th, 2014 The Rockwell family was attending David's deployment party. David

8 was called into his commands office where David's First Sergeant SSG Hull, Captain Rydzak,

9 David and Lisa were all present. SSG Hull and Vercruyssen spoke on the phone. Vercruyssen

10 offered a 4 bedroom ADA home to be moved into that day. Vercruyssen offer for an ADA home

11 was unconscionable and unreasonable. Vercruyssen stipulated adding six months to the current

12 lease and the Rockwell's must provide a decision by the end of the business day which was less

13 than two hours. The ADA home would have been a financial burden to NHC, costing thousands

14 of dollars in modifications. The entire home must be carpeted to accommodate Gabriel's

15 seizures, the home would not accommodate the other family member's disabilities. Alaska Stat.

16 § 08.84.190 (3) (f) Gabriel's mother uses the second story for occupational therapy by adapting

17 environments for the disabled. The Rockwell's did not request an ADA home. Although

18 landlords may reserve housing for people with particular disabilities under the FHA, there is

19 considerable case law under 504 and the ADA, which prohibits *excluding* people with disabilities

20 based on the nature or severity of their disability. 42 U.S.C. § 3604(f)(1); 28 C.F.R. § 100.202.5.

21 U.S. Department of Justice and U.S. Department of Housing and Urban Development, *Joint*

22 *Statement of Reasonable Accommodation Under the Fair Housing Act* (May 2004)

23       84. June 4th, 2014 Lisa emailed patient advocate Mr. Duncan to locate the December

24 RAF that Vercruyssen claims NHC never received.

25       85. June 9th, 2014 Mr. Duncan forwarded that email to EFMP Nurse Havens, Havens

26 replied Mr. Duncan stating NHC received the December RAF. Havens shared this confidential

27 email with Vercruyssen of NHC.

28       86. June 30th, 2014 NHC was again notified by JAG about their discrimination. NHC

29 counsel Groseclose says Vercruyssen was "confused" on what the Rockwell's needed The

30 Accommodation was confirmed by email months earlier on February 17th, 2014 and again

31 February 24th, 2014

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 15

1        87. Lisa continued to complain about the failure of NHC to even engage in correcting the

2    issues or someone to change the hinges to allow the bathroom to be accessed and the refund of

3    the service dog. David and Lisa Rockwell Filed Complaints with HUD and the Department of

4    Justice.

5        88. July 9th, 2014 Vercruyssen, Groseclose and JAG conferenced to explain what was

6    needed "Vercruyssen was again "confused" about the bathroom door. Captain Kerr explained it

7    was to change the hinges to make the bathroom accessible.

8        89. July 15th, 2014 Following Lisa and Gabriel's injury caused by excessive heat in the

9    home and NHC failure to attempt to make changes to the door, Lisa provided NHC a written

10   move out notice.

11       90. Lisa had to take out an Army Emergency Relief (AER) Loan, a loan from the Mac

12   Federal Credit Union, and money from David's Deployment savings to cover the cost of the

13   move to include deposits, first month's rent. Truck rental, fuel, cleaning expenses required by

14   NHC and movers pay estimated at $10,000.00. Other financial losses include Caregiver

15   Expenses $27,200.00 Transportation Expenses $9,100.00, Professional Expenses, Expert fees

16   $500.00, and Attorney's fees to date paid out of pocket.

17       91. July 23rd, 2014 NHC claims they explored the costs and decided they could change

18   the hinges to make the door accessible. NHC never attempted to reach the Rockwell's regarding

19   this matter.

20       92. July 24th, 2014 Mrs. Rockwell had her walk through.

21       93. Lisa later emailed JAG. Lisa was asked if NHC attempted to contact the family. NHC

22   never attempted contact.

23       94. March 24th through April 7th, 2015 during a recorded Interview, David and Lisa were

24   questioned by EO Officer Tora Henry. Ms. Henry's report contained numerous discrepancies.

25   Lisa notified Mrs. Henry, Deputy Director, and Office of Deputy assistant Secretary of the Army

26   for diversity and leadership Seema Salter and Department of Justice Linda Garrett to apprise

27   them of the discrepancies found. Ms. Salter stated the discrepancies would be noted. David

28   Daniels of Jag used the discrepant report for his final report to the Department of Defense. Mr.

29   Daniels stated he found no violation of 504.


COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 16

1   95. Forensic Document Examiner James Green examined the December and February

2   Request for Accommodation documents. It was determined by Mr. Green that the Rockwell's

3   did not complete the February form.

4

5                          3.   **GABRIEL ROCKWELL**

6

7       96. Plaintiff Gabriel Rockwell (Adult Child) resided in on-post housing with his parents

8   David, Lisa and two siblings Cheyenne and James. Gabriel is enrolled in EFMP and is a disabled

9   person within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(h).

10      97. Gabriel suffers from an unknown, uncontrolled Seizure disorder and Autism. From

11  the year 2000 until moving into the Neely home Gabriel had only suffered nocturnal seizures

12  requiring a seizure alert dog. Gabriel later suffered a heat induced seizure, resulting in a fractured

13  nose and facial lacerations. Gabriel seizures vary in frequency, type, and recovery. Sometimes

14  sleeping for up to four hours afterwards Gabriel requires a home fully carpeted.

15      98. Gabriel has a seizure alert dog (Lakota). Lakota complies with the Department of

16  Defense five consistently obeyed commands of sit, stay, leave it, down and come as well as to

17  bark upon a command word or hand signal given by Gabriel. No other commands were

18  necessary because Lakota does not accompany Gabriel out in Public. Gabriel also has ferret for a

19  companion animal. 28 C.F.R. § 35.136 (f) *Inquiries.* A public entity shall not ask about the

20  nature or extent of a person's disability, but may make two inquiries to determine whether an

21  animal qualifies as a service animal. A public entity may ask if the animal is required because of

22  a disability and what work or task the animal has been trained to perform. A public entity shall

23  not require documentation, such as proof that the animal has been certified, trained, or licensed

24  as a service animal. The only requirements to be classified as a service animal under federal

25  regulations are that the animal be (1) individually trained, and (2) work for the benefit of a

26  disabled individual. There is no requirement as to the amount or type of training a service

27  animal must undergo. Further, there is no requirement as to the amount or type of work a service

28  animal must provide for the benefit of the disabled person. 28 C.F.R. § 36.104 [(defining

29  "service animal" under the ADA]. [*30] The regulations establish minimum requirements for

30  service animals.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 17

                                                            3240 Plato Way
                                                            North Pole, AK 99705
ROCKWELL     (907)750-7101

99. Gabriel requires a rigid, highly structured constant routine, to include, times, locations, smells, temperatures sounds and including personal hygiene. Gabriel becomes very distressed by any change in routine. All events must be carefully planned and slowly integrated to avoid overstressing Gabriel. This allows other family members to have guests over without overwhelming Gabriel. Autistic children do not tolerate loud noises flashing lights or excessive heat. NHC claims they offered to show the Rockwell's how to control the heat (by opening a window). An open window below knee height to an autistic child with seizures could have resulted in deadly consequences

## 4. JAMES ROCKWELL

100. Plaintiff James Rockwell resided in on-post housing with his parents David, Lisa and two siblings Gabriel and Cheyenne. James is enrolled in EFMP and is a disabled person within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(h). James suffers from Right Hemiplegia Cerebral Palsy and Autism.

101. James Rockwell has had and will require numerous surgeries. A 2010 surgery left James wheelchair bound an entire summer. During recovery periods James uses the stairs for physical therapy of his upper body. When he is not using assistive devices he uses the stairs for exercise and rebuild strength on the right leg. For pain relief and muscle spasm James uses hot water instead of medication.

102. December 19th, 2013 @ 744 am, Lieutenant Colonel James Nolin notated in James Medical Records "paperwork given to EFMP and will contact patient and NHC".

## 5. CHEYENNE ROCKWELL

103. Plaintiff Cheyenne Rockwell (Cheyenne) resided in on-post housing with her parents David and Lisa Rockwell and siblings Gabriel and James. Cheyenne is enrolled in EFMP and is a disabled person within the meaning of the federal Fair Housing Act, 42 U.S.C. § 3602(h). Cheyenne Suffered from heat exhaustion due to the heat not being fixed, Cheyenne was ultimately relied upon when her older sister was not there Cheyenne was diagnosed with Anxiety and Depression as a result.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 18

1

## ADMINISTRATIVE REMEDIES

3

4      104. David and Lisa attempted administrative remedy with NHC in person, Personal

5  Legal Counsel, Military Counsel. A HUD Complaint and Department of Justice Complaint.

6

## THE INVESTIGATION (Rockwell's)

8      105. During the recorded Interview with Ms.Tora Henry, David explained the verbal and

9  written request made in December to NHC. Denali Village met all of their accommodation

10  needs, constructed according to federal regulations of covered multifamily dwellings for first

11  occupancy after the date that is 30 months after September 13, that accommodates disabilities in

12  the lower levels readily accessible to and usable by handicapped persons; all the doors designed

13  to allow passage into and within all premises within such dwellings are sufficiently wide to allow

14  passage by handicapped persons in wheelchairs; and all premises within such dwellings contain

15  the following features of adaptive design: an accessible route into and through the dwelling; and

16  usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the

17  space), NHC refused all reasonable Accommodation Request.

18

## THE INVESTIGATION (NHC staff Vercruyssen)

20

21      106. Vercruyssen states she attempted to reach the Rockwell's numerous times to include

22  21 May 2014 Phone records indicate the call in January and no emails regarding the door

23  modification exist. During this period Vercruyssen had been texting Sfc. Hull about this matter

24  and contends that Lisa Filled out the February RAF never mind the fact that Lisa's name is not

25  on any of the February documentation. During this Investigation NHC submitted to the

26  Investigator for the Army a floor plan that was not the home the Rockwell's resided in on Neely.

27      .107. NHC states it was their belief that Lisa Rockwell only needed to be at a lower

28  elevation. The evidence need not come from a physician; the opinion of "a peer-support group, a

29  non-medical service provider, or a reliable third party" may be sufficient). See also *Lincoln*

30  *Realty Management*, for an example of the difficulty in establishing disability when the disability

31  is not fully recognized or easily identifiable by medical professionals. *Secretary, HUD, v.*

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 19

1   *Jankowski Lee & Associates* (rejecting landlord's defense that a tenant's disability was not

2   apparent and finding that the landlord did not ask the tenant for any further verification of his

3   disability)

4

5                         **THE INVESTIGATION (Connie Kiser of RCI)**

6

7       108. Connie Kiser of RCI told investigators the Rockwell's moved out without notifying

8   NHC, and NHC did not let the Rockwell's out of their lease. Kiser claims the Rockwell's did not

9   provide enough documentation to justify requests for accommodations and contends Lisa

10   Rockwell filled out the February RAF. Kiser stated to Ms. Henry that NHC told Mrs. Rockwell

11   to open a window.

12       109. Kiser Stated the Rockwell's declined the offer of homes that NHC provided,

13   however the email specifically stated "*does not indicate there is an available home in that area,

14   nor that you would be the next to be offered a home in that area".

15   Connie Kiser had no factual knowledge of any events between NHC and the Rockwell's. Kiser's

16   statements are purely based on hearsay.

17

18              **THE INVESTIGATION (Bassett EFMP Nurse Laura Havens)**

19

20       110. Havens states Mrs. Rockwell hand delivered the December RAF form to her.

21   Havens confided in an email to patient advocate Duncan that she sent the December RAF and

22   notified NHC. Havens then shared this confidential email with NHC Vercruyssen

23

24                **UNDER SECRETARY OF DEFENSE RESPONSE**

25

26       111. The August 15th, 2016 letter from the Under Secretary of Defense states that "it is

27   permissible in this type of context to seek documentation demonstrating the task the animal has

28   been trained to perform and that the animal is required because of a disability". Courts have held

29   in numerous cases such as Clement v. Shammas, 2015 Cal. App. Unpub. LEXIS 4451 it is

30   legitimate for an owner to train his own dog, no professional trainer is required. The federal

31   regulations do not require that a service dog wear signs or tags,

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 20

1    112. The Department of Defense claims Army Directive 2013-01 covers the "acquisition

2    and use of service dogs by wounded, ill and injured soldiers with disabilities for whom a service

3    dog is clinically indicated." The Department of Defense claims it is reasonable to apply AD

4    2013-01 to civilians living in on-post housing, particularly to ensure consistency. The Army's

5    policy stipulates that a soldier must first seek approval for a service dog from his or her

6    commander. A soldier's eligibility for a dog would then be discussed by a panel of healthcare

7    professionals. This Policy states that the service animal must be trained by an authorized facility.

8    This policy 11 (b) also states a recommendation/prescription is no guarantee of animal

9    acquisition, placing an undue burden on the family members to acquire a needed service animal.

10   The ADA does not require service animals to be professionally trained or wear a vest. The

11   Rockwell's service dog complies with the Department of Defense five consistently obeyed

12   command of sit, stay, leave it, down and come.

13        113. The Department of Defense claims "the entity conducting the program may assert as

14   an affirmative defense to liability that accommodating the complainant's disabilities would

15   constitute and undue burden". 32 CFR § 56.S(d) and 28 CFR 13 42.51 l(c), "Fundamental

16   Alteration" shall mean: a modification that is so significant this It alters the essential nature of

17   the goods, services, facilities, privileges, advantages, or accommodations offered The

18   Department of Defense does not rely on Lisa, Cheyenne, Gabriel or James Rockwell's Physical

19   restrictions to conduct missions in theater, or Garrison.

20        114. The Americans with Disabilities Act, 42 U.S.C. § 12101, is an antidiscrimination

21   statute. It protects individuals with disabilities against discrimination in the areas of employment

22   (Title I), public services (Title II), and privately-operated public accommodations\ and services

23   (Title III). Title II of the ADA applies to housing provided by state and local governments,

24   including public housing authorities and state housing finance agencies, regardless of whether

25   they receive federal financial assistance. The U.S. Department of Justice's ADA regulations may

26   be found at 28 C.F.R. Part 35 (public services) and 28 C.F.R. Part 36 (privately operated public

27   accommodations), and at www.ada.gov.

28        115. Courts have held Congress intended to rely upon regulations and case law

29   interpreting the Rehab Act and other statutes protecting against disability discrimination when it

30   included the concept of reasonable accommodation in the 1988 amendments to the Fair Housing

31   Act. H.R. Rep. No. 100-711, *reprinted in* 1988 U.S. Code Cong. & Admin. News 2173, 2186.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 21

1  *Southeastern Community College v. Davis*, 442 U.S. 397 (1979). *See also* 28 C.F.R. §

2  35.130(f)(7) (ADA); 24 C.F.R. § 8.33 (Rehab Act); 24 C.F.R. § 100.204 (FHA). See *United*

3  *States v. California Mobile Home Park*, 29 F.3d 1413, 1416-17 (9th Cir. 1993) for an application

4  of undue burden analysis in a housing

5  case, and a description of the legislative and case law history of the concept.

6      *116. Bronk v. Ineichen*, 54 F. 3d 425 (7th Cir. 1995) (an animal may be considered a

7  service animal, even in the absence of formal training and certification);

8

9                              **D.  INJURIES**

10

11      117. By reason of defendants' unlawful acts and practices, Plaintiffs have suffered loss of

12  housing, violation of their civil rights, emotional distress, humiliation, economic damages,

13  attendant bodily injury, and other special and general damages according to proof, accordingly,

14  plaintiffs are entitled to compensatory damages. In doing the acts of which plaintiffs complain,

15  defendants and its agents and employees acted with oppression, fraud and malice, and with

16  wanton and conscious disregard of the rights of plaintiffs. Accordingly, plaintiffs are entitled to

17  punitive damages.

18      118. There now exists an actual controversy between the parties regarding defendants'

19  duties under the federal and state fair housing laws. Accordingly, plaintiffs are entitled to

20  declaratory relief. Unless enjoined, defendants will continue to engage in the unlawful acts and

21  the pattern and practice of discrimination described above. Plaintiffs have no adequate remedy at

22  law. Plaintiffs are now suffering and will continue to suffer irreparable injury from defendants'

23  acts and the pattern or practice of discrimination against people with disabilities unless relief is

24  provided by this Court. Accordingly, plaintiffs are entitled to injunctive relief.

25

26                         **CLASS ALLEGATIONS**

27

28      119. Plaintiffs bring this action on their own behalf and on behalf of all persons similarly

29  situated. The class which these plaintiffs represent is composed of all military families with at

30  least one disabled immediate family member who have been injured in their legal rights or are

31  threatened with such injury because of defendants' conduct in discriminating against families

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 22

3240 Plato Way
North Pole, AK 99705
(907)750-7101

1    with disabled members in regard to the provision of military family housing as alleged in this

2    Complaint. The persons in the class are so numerous that joinder of all such persons is

3    impracticable and the disposition of their claims in a class action is a benefit to the parties and to

4    the Court.

5        120. There is a well-defined community of interest in the questions of law and fact

6    affecting the class in that they were all discriminated against in the provision of housing because

7    of their own disability or the disability of someone in their immediate family. Defendants have

8    acted on grounds applicable to the class as a whole. Common questions of law and fact

9    predominate.

10       121. The claims of the named plaintiffs are typical of those of the class, and named

11    plaintiffs will fairly and adequately represent the interests of the class.

12    References to plaintiffs shall be deemed to include the named plaintiffs and each member of the

13    class.

14       122. WHEREFORE, Plaintiffs request relief as set forth below.

15

16                           **CLAIMS**

17                        **A. First Claim**

18              **[Fair Housing Act, 42 U.S.C. § 3601 et seq.l**

19       123. Plaintiffs reallege and incorporate by reference paragraphs 1 through 125 of this

20    Complaint.

21       124. Defendants have injured plaintiffs in violation of 42 U.S.C. § 3604(c) by making

22    printing, or publishing, or causing to be made, printed, or published any notice, statement, or

23    advertisement, with respect to the sale or rental of a dwelling that indicates any preference,

24    limitation, or discrimination based on handicap, or an intention to make any such preference,

25    Limitation, or discrimination.

26       125. Defendants have injured plaintiffs in violation of 42 U.S.C. § 3604(d) by

27    representing to persons because of handicap that any dwelling is not available for inspection,

28    sale, or rental when such dwelling is in fact so available.

29       126. Defendants have injured plaintiffs in violation of 42 U.S.C. § 3604(f)(l) by denying

30    housing, or by making housing otherwise unavailable, to persons with handicaps and persons

31    living with those persons or associated with those persons.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 23

1    127. Defendants have injured plaintiffs in violation of 42 U.S.C. § 3604(f)(2) by
2    discriminating against persons with handicaps, and persons living with those persons or
3    associated with those persons, in the terms, conditions, or privileges of rental of dwellings, or in
4    the provision of services or facilities in connection with such dwelling.
5    128. Defendants have injured plaintiffs in violation of 24 C.F.R. § 100.202(c) in an
6    inquiry to determine whether an applicant for a dwelling, a person intending to in that dwelling
7    after it is so sold, rented or made available, or any person associated with that person, has a
8    handicap or making inquiry as to the nature or severity of a handicap of such a person.
9    129. Defendants have injured plaintiffs in violation of 42 U.S.C. § 3604(f)(3)(A) by
10   refusing to permit, at the expense of handicapped persons, reasonable modifications of existing
11   premises occupied or to be occupied by such persons when such modifications are necessary to
12   afford such persons full enjoyment of the premises.
13   130. Defendants have injured plaintiffs in violation of 42 U.S.C. § 3604(f)(3)(B) by 10
14   refusing to make reasonable accommodations in rules, policies, practices, or services, when such
15   accommodations may be necessary to afford such person with a handicap an equal opportunity to
16   Use and enjoy a dwelling.
17   131. Defendants have injured plaintiffs in violation of 42 U.S.C. § 3604(f)(3)C) by, in
18   connection with the design and construction of covered multifamily dwellings for first
19   occupancy after the date that is 30 months after September 13, 1988, failing to design and
20   construct those dwellings in such a manner that the public use and common use portions of such
21   dwellings are readily accessible to and usable by handicapped persons; all the doors designed to
22   allow passage into and within all premises within such dwellings are sufficiently wide to allow
23   passage by handicapped persons in wheelchairs; and all premises within such dwellings contain
24   the following features of adaptive design: an accessible route into and through the dwelling; light
25   switches, electrical outlets, thermostats, and other environmental controls in accessible locations;
26   reinforcements in bathroom walls to allow later installation of grab bars; and usable kitchens and
27   bathrooms such that an individual in a wheelchair can maneuver about the space.
28   132. Defendants have injured plaintiffs in violation of 42 U.S.C. § 3617 by interfering
29   with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed,
30   or on account of their having aided or encouraged any other person in the exercise or enjoyment
31   of, any right granted or protected by 42 U.S.C. § 3604.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 24

1    133. WHEREFORE, Plaintiffs request relief as set forth below.

2

3                              **E.  Second Claim**

4              **[Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.l**

5

6        134. Plaintiffs reallege and incorporate by reference paragraphs 1 through 134 of this

7    Complaint.

8        135. Plaintiffs are qualified individuals with disabilities within the meaning of the

9        136. Defendants are the recipients of federal funds sufficient to invoke the coverage of

10   the Rehabilitation Act of 1973.

11       137. Defendants have intentionally discriminated against plaintiffs on the basis of their

12   Disabilities, in violation of the Rehabilitation Act. 29 U.S.C. § 794.

13       138. Solely by reason of their disabilities, plaintiffs have been, and continue to be,

14   excluded from participation in, denied the benefits of, and subjected to discrimination in their

15   attempts to receive, full and equal access to the programs, services and activities offered by

16   defendants in violation of the Rehabilitation Act. 29 U.S.C. § 794; 32 C.F.R. § 56.8(a).

17       139. Defendants have violated the Rehabilitation Act by providing different or separate

18   aid, benefits, or services to handicapped persons than is provided to others. 32 C.F.R. § 18

19   56.8(a)(2)(i).

20       140. Defendants have violated the Rehabilitation Act by denying qualified handicapped

21   person a live in aid 24 C.F.R part 8 § 982.316

22       141. Defendants have violated the Rehabilitation Act by denying a larger unit for live in

23   aid 28 C.F.R. 982.404(b)(6)

24       142. Defendants have violated the Rehabilitation Act by denying qualified handicapped

25   persons the opportunity to participate in or benefit from aids, benefits, or services. 32 C.F.R. §

26   56.8(a)(2)(ii).

27       143. Defendants have violated the Rehabilitation Act by affording qualified handicapped

28   persons an opportunity to participate in or benefit from aids, benefits, or services that is not equal

29   to that afforded others. 32 C.F.R. § 56.8(a)(2)(iii).

30       144. Defendants have violated the Rehabilitation Act by providing qualified handicapped

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 25

3240 Plato Way
North Pole, AK 99705
(907)750-7101

persons with aids, benefits, or services that is not as effective as that afforded to others. 32 C.F.R. § 56.8(a)(2)(iv).

145. Defendants have violated the Rehabilitation Act by otherwise limiting qualified handicapped persons in the enjoyment of any right, privilege, advantage, or opportunity granted to others receiving aids, benefits, or services. 32 C.F.R. § 56.8(a)(2)(v).

146. WHEREFORE, Plaintiffs request relief as set forth below.

## C. Third Claim

## [Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.l 10 118.

147. Plaintiffs reallege and incorporate by reference paragraphs 1 through 149 of this Complaint.

148. Defendants have injured plaintiffs in violation of 42 U.S.C. § 12101 et seq. and the regulations promulgated thereunder, 28 Code of Federal Regulations Part 36, in that Fort Wainwright family housing includes areas of public accommodation, including, inter alia, playgrounds, parks, and bus stops that are covered by Title III of the ADA, and defendants have failed to remove barriers to access by persons with mobility disabilities in those areas of public accommodation where such barrier removal is readily achievable.

149. Defendants have newly constructed and/or altered some of the public Accommodation areas of Fort Wainwright family housing without meeting the new construction/alteration access requirements imposed by Title III of the ADA.

150. Defendants' conduct constitutes multiple ongoing and continuous violations of the ADA and, unless restrained from doing so, defendants will continue to violate the law. Their conduct, unless enjoined, will continue to inflict injuries for which plaintiffs have no adequate remedy at law. Consequently, plaintiffs are entitled to injunctive relief pursuant to section 308 of the ADA, 42 U.S.C. § 12188.

151. WHEREFORE, Plaintiffs request relief as set forth below.

## D. Fourth Claim

## [42 U.S.C. § 1983: Equal Protection]

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 26

152. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 15 of this Complaint.

153. Defendants have injured plaintiffs in violation of plaintiffs' equal protection rights under the United States Constitution and 42 U.S.C. § 1983 because defendants' conduct in intimidating, harassing, and retaliating against soldiers and/or their families for asserting their fair housing rights was under color of state law and was arbitrary, capricious, or irrational. As a result, military families have been denied housing or have been denied the ability to use and enjoy their housing in an equal manner with other military families.

154. WHEREFORE, Plaintiffs request relief as set forth below.

## E. Fifth Claim
## [42 U.S.C. § 1983: Due Process]

155. Plaintiffs reallege and incorporate by reference paragraphs 1 through 154 of this complaint.

156. Defendants have injured plaintiffs in violation of plaintiffs' due process rights under the United States Constitution and 42 U.S.C. § 1983 by failing to create and implement clear, consistent and understandable policies and procedures regarding the provision of housing for military families who have disabled family members. As a result, military families have been denied housing or have been denied the ability to use and enjoy their housing in an equal manner with, other military families.

157. WHEREFORE, Plaintiffs request relief as set forth below.

## F. Sixth Claim
## [Alaska State's Law against Discrimination, AS 18.80 et seq.]

158. Plaintiffs reallege and incorporate by reference paragraphs 1 through 160 of this complaint.

159. Defendants have injured plaintiffs in violation of plaintiffs' rights under Alaska State's Law against Discrimination to be free from discrimination in real estate transactions,

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 27

3240 Plato Way
North Pole, AK 99705
ROCKWELL    (907)750-7101

including rental housing transactions, because of the presence of any sensory, mental, or physical disability. AS § 18.80.240.

160. WHEREFORE, Plaintiffs request relief as set forth below.

## G. Seventh Claim
### [Alaska State Constitution: Equal Protection]

161. Article I, Section 5 of the Alaska Constitution guarantees equal protection of the law to all persons.

162. The actions of defendants have violated and continue to violate the equal protection provision of the Alaska Constitution in that defendants' conduct in intimidating, harassing, and retaliating against soldiers and/or their families for asserting their fair housing rights was under color of state law and was arbitrary, capricious, or irrational. As a result, military families have been denied housing or have been denied the ability to use and enjoy their housing in an equal manner with other military families.

163. WHEREFORE, Plaintiffs request relief as set forth below.

## H. Eighth Claim
### [Alaska State Constitution: State Constitution: Due Process]

164. Plaintiffs reallege and incorporate by reference paragraphs 1 through 166 of this complaint.

165. Article 1, Section 7 of the Alaska Constitution guarantees due process of law to all persons.

166. The actions of defendants have violated and continue to violate the due process protections of the Alaska constitution in that defendants have made the process of applying for disability-related requests for accommodations or modifications extremely difficult and burdensome.

167. The actions of defendants have violated and continue to violate the due process protections of the Alaska Constitution in that defendants have failed to provide an appeal process for denials of disability-related requests for accommodations or modifications.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 28

3240 Plato Way
North Pole, AK 99705
ROCKWELL          (907)750-7101

1    168. The actions of defendants have violated and continue to violate the due process

2    protections of the Alaska Constitution in that defendants have established policies, practices and

3    procedures for the provision of housing to families with disabled members which are not clear,

4    consistent, or understandable, nor are they evenhandedly applied.

5    169. WHEREFORE, Plaintiffs request relief as set forth below.

6

7                          I.   Ninth Claim

8           [Breach of Contract: Third-Party Beneficiary]

9

10   170. Plaintiffs reallege and incorporate by reference paragraphs 1 through 172 of this

11   Complaint.

12   171. In or around the year 2008, the United States Army entered into a contract with

13   defendant ALL / NHC, and a joint venture between ALL/NHC.

14   172. The conditions of the Community Development and Management Plan (CDMP),

15   including several Memoranda of Agreement and sub-contracts, constitute the contractual

16   conditions under which ALL/NHC was authorized by the United States to hold the contract for

17   the Fort Wainwright family housing privatization project and implement the Military Family

18   Housing Privatization Initiative at Fort Wainwright.

19   173. The named Plaintiffs and Plaintiff class were direct and intended third beneficiaries

20   of the contractual agreements between the United States and defendant ALL/NHC embodied in

21   the CDMP and other contractual obligations that relate to the Fort Wainwright family housing

22   privatization project.

23   174. ALL/NHC and RCI of Fort Wainwright and its agents repeatedly failed to abide by

24   those contractual obligations and breached contractual duties owed to the Plaintiffs including,

25   but not limited to:

26   (a) Provisions that require ALL/NHC and its agents to comply with all federal, state, and

27   local laws, including the Fair Housing Act, that prohibit discrimination against people because of

28   disability;

29

30

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 29

3240 Plato Way
North Pole, AK 99705
ROCKWELL      (907)750-7101

1      (b) Provisions that require ALL/NHC and Resident Community Initiative of Fort

2 Wainwright and its agents to display a Fair Housing poster and Equal Opportunity slogan at all

3 times in clear view of prospective and current residents; and

4      (c) Provisions that require ALL/NHC and its agents to use education resources and

5 training programs about methods that ensure compliance with Fair Housing laws.

6      175. It was foreseeable and known to ALL/NHC and DOD that its breach of contract

7 and/or failure to abide by the contract conditions would cause actual, special, general and

8 emotional injuries and damages to plaintiffs. As a proximate result of these acts and omissions,

9 the named Plaintiffs and the Plaintiff class were damaged and suffered injuries as alleged herein.

10      176. It was foreseeable and known to the Department of Defense that it's Breach of

11 Contract and/or failure to abide by the contract conditions would cause actual, special, general

12 and emotional injuries and damages to plaintiffs. As a proximate result of these acts and

13 omissions, the named Plaintiffs and the Plaintiff class were damaged and suffered injuries as

14 alleged herein

15      177. WHEREFORE, Plaintiffs request relief as set forth below

16

17 **RELIEF**

18

19      Plaintiffs pray for the following relief against defendants:

20      178. That the court enjoin all unlawful practices and contractual breaches complained

21 about herein and impose affirmative injunctive relief requiring defendants, their partners, agents,

22 employees, assignees, and all other persons acting in concert with or participating with it, to take

23 affirmative action to provide equal housing opportunities to all tenants and prospective tenants

24 without regard to handicap or disability.

25      179. That the Court declare that defendants have violated the provisions of the applicable

26 federal and state fair housing and disability laws and breached contractual duties owed to

27 plaintiffs as third-party beneficiaries.

28      180. That the Court award compensatory and punitive damages to plaintiffs according to

29 proof.

30      181. That the Court grant costs of suit, including reasonable attorneys' fees; and.

31      182. That the Court grant all such other relief as the Court deems just.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 30

3240 Plato Way
North Pole, AK 99705
ROCKWELL    (907)750-7101

1    DATED THIS __7th__ day of January, 2018

2

3

4                             David Rockwell

5                             Lisa Rockwell

6

7                             Cheyenne Rockwell

8

9               Lisa Rockwell Legal Guardian for

10              Gabriel and James Rockwell

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF 31

3240 Plato Way
North Pole, AK 99705
ROCKWELL    (907)750-7101